UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**STEPHEN RYAN BURNETT**,

    Plaintiff,

v.                                                                    2:22-cv-669-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

# ORDER

Plaintiff Stephen Ryan Burnett seeks judicial review of a denial of child disability benefits ("CDB") and disability insurance benefits ("DIB"). The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 9),[1] Burnett filed an opening brief (Doc. 13), the Commissioner responded (Doc. 16), and Burnett replied (Doc. 17). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.     Eligibility for Disability Benefits and the Administration's Decision**

    **A.     Factual and procedural history**

On November 14, 2014, Burnett applied for disability insurance benefits, child disability benefits, and supplemental security income. (Tr. 56-58, 62). On

---

[1] Cited as "Tr." followed by the appropriate page number.

behalf of the administration, a state agency[2] found Burnett was disabled and eligible for supplemental security income ("SSI") beginning November 14, 2014, the date he filed his application. (Tr. 57). However, for technical reasons and not based on the merits, the agency denied Burnett's CDB and DIB applications. (Tr. 56, 58). On April 21, 2016, the Commissioner conducted a continuing disability review and found that Burnett continued to be disabled. (Tr. 59).

On November 11, 2020, Burnett filed new CDB and DIB applications. (Tr. 60-61). Alleging disability due to his "body" (Tr. 274), Burnett asserted an onset date of January 1, 2011. (Tr. 268). As of the alleged onset date, Burnett was nineteen years old. (Tr. 25). He has a high school education and no past relevant work. (Tr. 25, 51-52, 275).

Assessing whether he was disabled from January 2011 through March 2013 (the relevant period for any CDB or DIB benefits), the agency reviewed and denied Burnett's applications initially on March 10, 2021, and upon reconsideration on September 2, 2021. (Tr. 107, 112, 118, 123). At Burnett's request, Administrative Law Judge (ALJ) Charles Arnold held a hearing and on March 1, 2022, the ALJ issued an unfavorable decision finding Burnett not disabled. (Tr. 13-27, 34). Burnett's timely request for review by the administration's Appeals Council was

---

[2] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

2

denied. (Tr. 1-4). Burnett then brought the matter to this court, and the case is ripe for judicial review.

## B. Eligibility

During the period of time put at issue, Burnett was an unmarried adult under the age of 22. (Tr. 245, 248). And to be eligible for either CDB or DIB, Burnett needed to show that, during this time, he was disabled for purposes of the Social Security Act.

The Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[3] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[4] And when functional limitations preclude both a return to past work and doing any other work sufficiently

---

[3] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[4] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities).

available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[5]

### C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[6]

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social

---

[5] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[6] "To make a final determination as to whether an adult-child claimant is or is not disabled, the Commissioner employs the same five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520 that is applicable to adults." *Mainville v. Comm'r of Soc. Sec.*, No. 6:18-cv-482-Orl-41LRH, 2019 WL 3225579, *1 (M.D. Fla. July 2, 2019), *report and recommendation adopted*, 2019 WL 3219895 (July 17, 2019).

Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the

5

Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Burnett had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. (Tr. 19). At step two, prior to his date last insured and before he attained age 22, the ALJ characterized Burnett's severe impairments as: "psychotic disorder, anxiety." (Tr. 19). At step three, the ALJ determined that Burnett did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 19).

> As a predicate to step four, the ALJ arrived at the following RFC:
>
> [T]he claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant could perform only low stress work defined as having no high production demands, only simple routine repetitive tasks with simple instructions, and only occasional interaction with others at the worksite.

(Tr. 20). And the ALJ found that Burnett had no past relevant work.[7] (Tr. 25). At step five, the ALJ found Burnett could perform jobs that exist in significant numbers in the national economy. (Tr. 25). In support, a vocational expert testified (Tr. 26) that an individual of Burnett's age, education, work experience, and RFC can perform the following representative occupations:

- *Bagger,* DOT #920.687-018, light; SVP 1, with 42,000 jobs in the national

---

[7] In particular, the ALJ found that Burnett's work activity did not meet the recency, earnings, and duration requirements to qualify as past relevant work. (Tr. 25).

6

economy;

- *Cleaner II,* DOT #919.687-014, medium; SVP 1, with 36,000 jobs in the national economy; and

- *Marker,* DOT #209.587-034, light; SVP 2, with 82,000 jobs in the national economy.[8]

Thus, for purposes of the Act, the ALJ concluded Burnett was not disabled from January 1, 2011, the alleged onset date, through March 31, 2021, the date last insured, or at any time prior to attaining the age of 22 in March 2013. (Tr. 26).

## II.   Analysis

Burnett's appeal presents three issues for review:

(1)  whether the ALJ satisfied his duty to develop a full and fair record;

(2)  whether the ALJ, when formulating the RFC, failed to address Burnett's limitations in adapting and managing himself; and

(3)  whether the ALJ properly considered testimony from Burnett's mother.

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127,

---

[8] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

## B. The ALJ developed a full and fair record

As mentioned above, Burnett previously applied for CDB, DIB, and SSI benefits on November 14, 2014. (Tr. 56-58, 62). While Burnett was found eligible for SSI benefits beginning on November 14, 2014, the CDB and DIB applications were denied for reasons unrelated to their merits. (Tr. 16, 21, 56, 58, 62).

Citing to the Hearings, Appeals, and Litigation Law Manual for the Social Security Administration ("HALLEX") I-2-1-13, Burnett argues that the ALJ committed reversible error by not making the 2014 claim files part of the record. (Doc. 13 at 14). Based on an assumption that the 2014 claim files *might* contain information beyond that which was considered here (even though he submitted them and has the burden of proof), Burnett speculates that they "*could*" contain evidence pointing to a disabled status prior to his 22nd birthday in March 2013. (Doc. 13 at 14). Thus, Burnett argues that because the ALJ failed to "associate"[9] the 2014 claims to the present claim, remand is warranted. Burnett's arguments are unavailing for several reasons.

First, while the ALJ has a basic duty to develop a full and fair record, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355

---

[9] It is not entirely clear what Burnett means by "associate." But the court presumes he takes issue with the ALJ's failure to make this purported evidence part of the record.

F.3d 1272, 1276 (11th Cir. 2003). Burnett's counsel failed to raise any issue with the record at the hearing. In fact, he specifically informed the ALJ that there was no outstanding evidence, and on two occasions stated the "*record is complete*." (Tr. 38, 54) (emphasis added). So Burnett cannot argue here, for the first time, that the record should have been further developed. *See Larry v. Comm'r of Soc. Sec.*, 506 F. App'x 967, 969 (11th Cir. 2013) ("The ALJ then specifically asked [the plaintiff's attorney] if he had any additional exhibits, and his attorney replied that the record was complete. Thus, any alleged error the ALJ may have made in not obtaining more recent medical records was invited." (internal citations omitted)); *Bischoff v. Astrue*, No. 07-60969, 2008 WL 4541118, *18 n.9 (S.D. Fla. Oct. 9, 2008) (rejecting a failure-to-develop-the-record claim where claimant "neither produced [the records at issue] nor requested that the Commissioner obtain them," and where, during the hearing, claimant's counsel represented that the record was complete). Therefore, Burnett's argument that the ALJ failed to develop the record falls short from the start.

Second, "[HALLEX] is a policy manual written by the [SSA] to provide guidance on procedural matters." *See Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000), cited in *Warren v. Astrue*, 830 F. Supp. 2d 1369, 1372 (S.D. Fla. 2011); *Carroll v. Soc. Sec. Admin., Comm'r*, 453 F. App'x 889, 892 (11th Cir. 2011) (noting that HALLEX is "an agency handbook for the SSA"). Thus, HALLEX merely

supplies guidelines for the ALJ's hearing process, and it has not been given the force of law. *See Moore*, 216 F.3d at 869; *Hall v. Comm'r of Soc. Sec.*, No. 2:05-cv-559-FtM-29SPC, 2007 WL 4981325, *10 (M.D. Fla. Feb. 9, 2007) ("HALLEX like all administrative manuals lacks the legal authority to bind the ALJ"); *see also George v. Astrue*, 338 F. App'x 803, 805 (11th Cir. 2009) (assuming that HALLEX carries the force of law would be "a very big assumption").

Moreover, "the Eleventh Circuit has indicated in several unpublished decisions that HALLEX does not create judicially enforceable rights, particularly where a plaintiff fails to establish prejudice." *Clark v. Comm'r of Soc. Sec.*, No. 8:20-cv-1261-WFJ-JSS, 2022 WL 428503, *4 (M.D. Fla. Jan. 14, 2022) (collecting cases). "Prejudice at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Id.*; *see also Mosley v. Comm'r of Soc. Sec.*, 633 F. App'x 739, 742 (11th Cir. 2015) (holding that if an ALJ fails to fulfill his duty to develop the record, remand is only required if "the record reveals evidentiary gaps which result in unfairness or clear prejudice"). However, because his argument is based on multiple layers of suppositions, Burnett does not and cannot show that the absence of the applications from the record posed any prejudice. Rather, he merely contends that there is a "good chance" the evidence was relevant and "could make a difference

in establishing whether disability is present." (Doc. 13 at 10-11, 14; Doc. 17 at 2). Therefore, to the extent Burnett suggests he suffered any prejudice—it is speculative at best as he does not identify what, if any, evidence should have been considered.

Finally, Burnett's argument that, pursuant to HALLEX I-2-1-13(B)(1), the ALJ was required to consider the 2014 DIB and CDB claims with his present claim in order to determine whether res judicata applies, also falters.[10] (Doc. 13 at 11-12). This HALLEX section provides, in part, that the Office of Hearing Operations (OHO) staff must request a prior claim(s) file—without consulting with the ALJ—when "[t]he pending claim involves a possible reopening or res judicata issue." Burnett notes that while the agency determined that res judicata does not apply, it did not explain how it reached this finding or the evidence it relied upon in doing so. (Doc. 13 at 11-12). Thus, Burnett argues that the ALJ, being faced with a potential res judicata issue, was required to associate the 2014 claims with the present claim to determine whether res judicata applies. (Doc. 13 at 12). Burnett is mistaken.

HALLEX I-2-1-13(B)(1) does not require an ALJ to make a prior claim file part of the record. In fact, this subsection cited by Burnett does not appear to establish any duty of the ALJ. Rather, it imposes a duty on OHO staff to request prior claim files for the ALJ's consideration. HALLEX I-2-1-13(B)(1). Moreover,

---

[10] Burnett presents this argument under the assumption that the ALJ made an error in stating that his 2014 DIB and CDB claims were not adjudicated on the merits. (Tr. 21; Doc. 13 at 11).

the final subsection—which neither party briefed—explains, "[w]hen an ALJ relied on information from a prior claim(s) file, the ALJ will make the evidence part of the record in the pending claim and address the evidence in the written decision" but "[a]n ALJ is not required to address evidence on which the ALJ does not rely." HALLEX I-2-1-13(F). "Thus, the ALJ need not make information from a prior claims file part of the record or refer to it in the decision if he or she does not rely on it." *Class v. Berryhill*, No. 3:16-cv-1415-J-JBT, 2018 WL 11255570, *3 (M.D. Fla. June 14, 2018). Within these confines, the ALJ was under no obligation to consider evidence from the prior claims file. And, as discussed above, Burnett has not demonstrated there were evidentiary gaps such that he was prejudiced.

> C. **The ALJ properly considered Burnett's limitations in adapting and managing himself when formulating the RFC**

When assessing Burnett's mental impairments under "paragraph B" criteria, the ALJ found that Burnett was "moderately" impaired in three areas of mental functioning, but that he was "mildly" impaired in his ability to adapt or manage himself. (Tr. 19). While Burnett does not dispute these findings, he argues that the RFC should have been further limited to account for the mild adapt-and-manage impairment. (Doc. 13 at 14). He is incorrect.

To start, Burnett improperly conflates (1) degrees of impairment in the paragraph B findings, *see* 20 C.F.R. § 404.1520a, with (2) functional limitations in an RFC, *see* 20 C.F.R. § 404.1545. The degrees of impairment in the paragraph B

13

criteria help the ALJ determine the overall severity of any mental impairment or whether any such impairment meets a listing, while the functional limitations in the RFC help the ALJ determine the kinds of work that a claimant can perform. *Compare* 20 C.F.R. § 404.1520a, with 20 C.F.R. § 404.1545. Indeed, the ALJ in this instance noted that "the limitations identified in 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 19).

As a threshold consideration, courts have repeatedly rejected the notion that a "mild" paragraph B finding at step 2 compels the inclusion of a work restriction at step 4. *See, e.g.*, *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016) (finding that the ALJ did not err by failing to include limitations in the RFC related to the plaintiff's non-severe mental impairment when the ALJ found that the plaintiff had only "mild" limitations); *Guerrera v. Kijakazi*, No. 8:22-cv-00740-AEP, 2023 WL 2446626, *5 (M.D. Fla. Mar. 10, 2023) ("ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations in the paragraph B criteria."); *Eutsay v. Kijakazi*, No. 21-21164-cv, 2022 WL 1609088, *9 (S.D. Fla. May 4, 2022) (finding that the ALJ was not required to include mental RFC limitations despite finding "mild" limitations in the paragraph B criteria), *report and recommendation adopted*, 2022 WL 1605318 (May 20, 2022); *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-cv-482-MRM, 2022 WL 4354849, *8 (M.D. Fla.

14

Sept. 20, 2022) (same). Thus, even if the ALJ ignored—when formulating the RFC—his paragraph B finding of a mild impairment in Burnett's ability to adapt or manage himself, there would be no error. *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, *5 (M.D. Fla. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 1138179 (Mar. 25, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC.").

But more importantly, the court is not persuaded by Burnett's contention that the ALJ failed to consider this mild paragraph B finding during the RFC analysis. (Doc. 13 at 16-17). Before conducting the step-four analysis, the ALJ stated that the "following residual capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 20). This alone is enough. *See Medwit*, 2021 WL 1341390, at *4. In fact, the ALJ arrived at a highly restrictive RFC, limiting Burnett to low-stress work, simple routine repetitive tasks, and only occasional interactions with others. (Tr. 20). And the ALJ appropriately discussed Burnett's subjective complaints, function reports completed by Burnett's mother, hearing testimony, treatment records, and medical opinions when assessing Burnett's mental limitations for the RFC. Nothing more was required.

### D. The ALJ properly considered the testimony of Burnett's mother

As Burnett correctly points out, if the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if, and to what extent, the claimant's symptoms limit his ability to do work-related activities. *See* 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3), 416.929(c), 416.945(a)(3); SSR 16-3p, 2017 WL 5180304 at *7-8. Furthermore, an ALJ will "consider descriptions and observations of [a claimant's] limitations from [his] impairment(s), including limitations that result from [his] symptoms, such as pain, provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3). And on this score, Burnett argues that the ALJ failed to consider his mother's testimony or adequately explain why he did not find it persuasive. (Doc. 13 at 22-23).

But an ALJ is "not required to articulate" how he "considered evidence from nonmedical sources." *Shawn v. Kijakazi*, No. 21-80908-civ, 2022 WL 4235017, *15 (S.D. Fla. Sep. 14, 2022) (quoting 20 C.F.R. § 416.920c(d)). In other words, "[t]he ALJ is not required to adopt a lay witness's statement or explain [his] reason for not adopting it." *Id.* (citing 20 C.F.R. § 416.920c(d)). "The regulations require the ALJ to only consider the lay evidence," as he did here. *Id.* (citing 20 C.F.R. § 416.945(a)(3)). In fact, the ALJ in this instance not only summarized and considered

16

the entirety of Burnett's mother's testimony and her Function Reports (Tr. 21, 302-09, 339-46), he explained why he did not find her testimony persuasive. This is more than the ALJ was required to do. Thus, Burnett has shown no error.

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment in the Commissioner's favor, terminate all scheduled events, and close the case.

**ORDERED** on March 26, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge